UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00166-HBB

CAROL A. PITCOCK                                                                           PLAINTIFF

VS.

ANDREW SAUL,
Commissioner of Social Security[1]                                                   DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Carol Pitcock seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both Pitcock (DN 14) and the Commissioner (DN 20) have filed a Fact and Law Summary. For the reasons that follow, the undersigned orders that judgment be granted in favor of the commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11). By Order entered July 23, 2018 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed.R.Civ.P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

## Findings of Fact

Carol Pitcock protectively filed an application for supplemental security income on behalf of, EC, a minor, on May 21, 2015 (Tr. 501-509). Pitcock alleged that EC became disabled on December 18, 2014 as a result of Asperger's Syndrome, Paranoid Schizophrenia, and Muscular Disorder (Tr. 534). Administrative Law Judge Koren Mueller ("ALJ") conducted a hearing on September 19, 2017 via video. ALJ Mueller presided from St. Louis, Missouri. Pitcock and EC appeared in Bowling Green, Kentucky represented by Charles Dale Burchett, an attorney.

In a decision dated January 18, 2018, the ALJ evaluated this adult disability claim pursuant to the three-step sequential evaluation process promulgated by the Commissioner (Tr. 15-30). At the first step, the ALJ found EC has not engaged in substantial gainful activity at any time relevant to this decision (Tr. 18). At the second step, the ALJ determined that EC's Charcot Marie Tooth Syndrome, Depressive Disorder, Generalized Anxiety Disorder, and Obsessive-Compulsive Disorder are "severe" impairments within the meaning of the regulations (Tr. 18). Notably, at the second step, the ALJ also determined that EC's Autism Spectrum/Asperger's Disorder are "non-severe" impairments within the meaning of the regulations (Tr. 18). At the third step, the ALJ concluded that EC does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 18). Therefore, the ALJ found EC has not been disabled since December 18, 2014, the date the application was filed.

EC timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 561-68). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

### The Commissioner's Sequential Evaluation Process

The Commissioner has promulgated regulations setting forth a three-step sequential evaluation process for evaluating a child's claim of disability. 20 C.F.R. § 416.924. In

summary, the evaluation proceeds as follows:

> (1) Is the child engaged in substantial gainful activity?
>
> (2) Does the child have a severe impairment?
>
> (3) Does the child have an impairment that satisfies the duration requirement and meets, medically equals, or functionally equals the criteria of a listed impairment within Appendix I?

20 C.F.R. § 416.924.

To meet a listing within Appendix 1 the child claimant must demonstrate both the diagnostic and the severity or "B" criteria are satisfied. 20 C.F.R. § 416.925(d). To medically equal a listing there must be medical findings supported by medically acceptable clinical and laboratory diagnostic techniques that demonstrate the impairment is at least equal in severity and duration to the listed finding. 20 C.F.R. § 416.926(a) and (b). The Administrative Law Judge will consider the medical opinions of the State agency medical advisors in deciding medical equivalence. 20 C.F.R. § 416.926(c).

If the impairment does not meet or medically equal any listing in Appendix 1, the Administrative Law Judge will determine whether it results in limitations severe enough to functionally equal the listings in Appendix 1. 20 C.F.R. § 416.926a(a). In making this determination, the Administrative Law Judge will consider the degree of limitation caused by the impairment in six broad areas of functioning called domains. 20 C.F.R. § 416.926a(b)(1). The six domains are (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. 20 C.F.R. §§ 416.926a(b)(1)(i)-(vi). If an impairment results in "marked" limitations in two of the six domains or results in an "extreme" limitation in one of the six domains, then it is severe enough to functionally equal the listings. 20

C.F.R. § 416.926a(a). A "marked" limitation results if the child's impairment(s) interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

Here, the ALJ denied Pitcock's claim at the third step.

<u>Challenged Findings</u>

I. Neurological Listing 111.14

Pitcock's first claim is that the ALJ incorrectly found that EC's conditions did not meet or medically equal the requirements of Listing 111.14, which states:

> **111.14 Peripheral neuropathy**, characterized by disorganization of motor function in two extremities (see 111.00D1), resulting in an extreme limitation (see 111.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities.

An extreme limitation means the inability to stand from a seated position, balance while standing and while walking, or use your upper extremities to independently initiate, sustain, and complete age appropriate activities. The inability to stand from a seated position means that once seated a claimant is unable to stand and maintain an upright position without the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes. Inability to maintain balance in a standing position means that a claimant is unable to maintain an upright position while standing or walking without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§111.00D (1), (2).

Pitcock argues the ALJ misinterpreted medical evidence to find EC's examining sources "have not noted that the claimant has difficulty standing up from a seated position, maintaining balance in a standing position or using his upper extremities" (DN 14 PageID # 1170, citing Tr. 21). According to Pitcock, the ALJ "misquoted evidence" and erroneously relied on irrelevant and unreliable evidence in the record (Id. at 1171-72) before concluding EC did not meet listing 111.14. In response, the Commissioner argues the ALJ correctly interpreted the medical evidence which demonstrates EC does not meet the listing requirements (DN 20 PageID # 1191-1194).

The ALJ concluded that EC did not meet listing 111.14 because he has not demonstrated an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use his upper extremities (Tr. 19). The ALJ acknowledged EC has some limitations stemming from his Charcot Marie Tooth Syndrome, but not to the extent claimed by Pitcock (Tr. 20). The ALJ nor this Court has found any medical evidence that EC has difficulty standing from a seated position (Tr. 21). To the contrary, EC testified at his hearing that he was able to stand from a seated position by using his arms to push himself up (Tr. 49). There is minimal evidence that EC has some difficulty using his upper extremities—he testified that he holds a pencil with his entire fist. But his mother testified that he plays video games requiring finger dexterity daily (Tr. 68). Pitcock does not attempt to argue that EC has difficulty using his upper extremities. Therefore, the issue is whether the ALJ's finding that EC does not have an extreme limitation balancing while standing or walking is supported by substantial evidence.

The ALJ began his analysis by examining EC's medical records both before and after EC's foot surgeries (Tr. 20). Pitcock takes issue with the ALJ's interpretation of pre-surgery notes from EC's treating orthopedist, Dr. Sarah Seward (DN 14 PageID # 1170). Those notes state that EC "has a hard time standing [b]arefoot and balancing, balance and coordination seem decreased" (Tr.

890). The ALJ cited Dr. Seward's notes directly after stating "the claimant's examining sources have not noted that the claimant has difficulty standing up from a seated position, maintaining balance in a standing position, or using his upper extremities" (Tr. 21).

Notably, Dr. Seward's notes indicated that EC has a hard time standing *barefoot.* (Tr. 890 emphasis added). But Dr. Seward also noted EC's "reciprocal gait" and the ability to "dorsiflexion, plantar flex, invert, and somewhat evert the bilateral feet with 4/5 strength globally." EC denied having balance issues prior to surgery (Tr. 739). In addition to Dr. Seward, Dr. Jerry Bean, EC's pediatrician, indicated he walked with only minimal discomfort and no limp after spraining his ankle (Tr. 698). EC did not require the use of assistive devices to ambulate until his post-surgery recovery (Tr. 21). EC confirmed this in his testimony at the hearing (Tr. 50). The medical records indicate EC was recovering well from his surgeries (Tr. 1030, 1084). The surgeries improved alignment in both EC's left and right foot (Tr. 1030, 1067). Soon after surgery EC was able to bear weight on his right foot (Tr. 1067). Pitcock emphasizes Dr. Laura Jack's statement EC "really needs a wheelchair for daily use at school, and for other longer distance mobility. This is really a lifelong need." However, the ALJ acknowledged Dr. Jacks' opinion, but discounted it due to PA Amanda Taylor's recommendation that EC walk more to recover more quickly (Tr. 21, 1085). PA Taylor also recommended EC progress to full weightbearing on both legs as soon as able (Tr. 1086). In fact, EC could walk short distances soon after his surgery (Tr. 1084). The record indicates that EC required the use of a walker and wheelchair to ambulate post-surgery, but this was temporary. The medical evidence indicates that EC did not need an assistive device prior to surgery, which by all accounts improved the condition of his feet. He was recovering well from his surgeries and was encouraged by his treating physicians to bare more weight on his feet and continue to walk.

While there is some evidence in the record to support Pitcock's argument, this Court is limited to reviewing whether the ALJ's decision was supported by substantial evidence in the record and correct legal standards were applied. Cotton, 2 F.3d at 695; Landsaw 803 F.2d, 213. If so, the ALJ's decision must be upheld even if substantial evidence also supports the opposite conclusion. Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). The ALJ's findings were supported by substantial objective medical evidence in the record, and therefore cannot be overturned.

II. Listings 101.02 and 101.03

Pitcock's second claim is that EC meets the requirements of listings 101.02 (major dysfunction of a joint) and 101.03 (reconstructive surgery of a major weight-bearing joint) (DN 14 PageID # 1172-75). She contends the ALJ "failed to make any consideration of whether these listings were met." (Id.). In response, the Commissioner acknowledges that the ALJ did not expressly address the subject listings, but she relied upon opinions of state reviewing physicians who considered the listings which found the listings were not met or medically equaled (DN 20 PageID # 1194). Because "the ALJ assigned significant weight to the state reviewing physicians' opinions, and because those opinions took into account the orthopedic listings" there was no harmful error (Id. citing Willis v. Colvin, 4:15-CV-00089, 2016 WL 3033766 at *5 (W.D. Ky. May 26, 2016)).

> **Listing 101.02 Major dysfunction of a joint(s) (due to any cause)** reads:
>
>> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony, or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony deconstruction, or ankylosis of the affected joint(s). With:
>>
>> Involvement of one major peripheral weight-bearing joint (i.e., hip,

> knee, or ankle), resulting in inability to ambulate effectively, as defined in 101.00B2b;
>
> Or
>
> Involvement of one major peripheral weight-bearing joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting inability to perform fine and gross movements effectively, as defined in 101.00B2c.

**Listing 101.03 reconstructive surgery or surgical arthrodesis of a major weight-bearing joint**, reads:

> Inability to ambulate effectively, as defined in 101.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

The inability to ambulate effectively means:

> an extreme limitation of the ability to walk; i.e., an impairment that interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 101.00J). to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R., Pt. 404, Subpt. P., App. 1. § 101.00B(2).

Here, the ALJ found that the medical evidence did not demonstrate extreme limitations in EC's ability to initiate, sustain, and complete age-appropriate activities (Tr. 21). The ALJ noted that EC's doctors reported he was recovering well since his surgeries. The ALJ acknowledged that EC presented to the hearing in a wheelchair, and Dr. Jack's opinion that a wheelchair would be a "lifelong need" but discounted this evidence because it was inconsistent with other medical evidence in the record. Again, PA Taylor recommended that EC walk more to aid his recovery (Tr. 21, 1085) and EC should progress to full weightbearing on both legs as soon as able (Tr. 1086). EC was walking not long after his surgery (Tr. 1084). Prior to surgery, EC did not need

any assistive device to ambulate (Tr. 50). He required the use of a walker only while recovering from his first surgery (Tr. 52).

Also notable for this analysis is the "great weight" the ALJ assigned to state agency reviewing physicians Perritt, Underwood, Yarbro, and Prout (Tr. 22, 398-399, 408-09). Dr. Perritt and Underwood explicitly reviewed EC's medical records and explicitly found that he did not meet listing 101.02 (Tr. 398-399). As did Dr. Yarbro and Prout (Tr. 408-409). An ALJ "without explicitly mentioning a particular listing, may nonetheless make findings sufficient to determine whether the listing is met." McClellan v. Astrue, 804 F. Supp. 2d 678, 693 (E.D. Tenn. 2011). A court may search the ALJ's entire decision to determine whether the appropriate medical listings were considered. Bledsoe v. Barnhart, 165 Fed. Appx. 408, 411 (6th Cir. 2006). The undersigned has reviewed the ALJ's decision and found that the ALJ adequately considered all the medical evidence in the record and expressly considered several listings applicable to EC's medical impairments. Even if the ALJ should have explicitly mentioned the listings in her decision, the failure to do so was harmless because the ALJ considered evidence relevant to a listing determination throughout her decision. See Willis v. Colvin 4:15-CV-00089, 2016 WL 3033766 at *5 (W.D. Ky. May 26, 2016).

Again, the undersigned acknowledges that evidence in the record exists to support Pitcock's position. But this Court may only overturn the ALJ's decision if it is not supported by substantial evidence or incorrect legal standards are applied—neither of which is present here. Therefore, the ALJ's decision must be upheld.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

**IT IS FURTHER ORDERED** that Judgment is entered for the Commissioner, pursuant to 42 U.S.C. § 405(g).

November 25, 2019

*H. Brent Brennenstuhl*
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:   Counsel